

FILED by __KS__ D.C.

Apr 14, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 22-20156-CR-MOORE/LOUIS
### CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 3551 et. seq.

UNITED STATES OF AMERICA

vs.                                                          UNDER SEAL

STERICYCLE, INC.,

    Defendant.

_____/

The United States charges:

    At all times relevant to this Information, unless otherwise stated:

I.    <u>The Defendant and Relevant Entities and Individuals</u>

    1.    Stericycle was a Delaware corporation headquartered in Lake Forest, Illinois. Stericycle ran an international waste management network, focused primarily on medical waste, industrial waste, maritime waste, and document destruction. Stericycle had a class of publicly traded securities that were registered with the United States Securities and Exchange Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 and were traded on the NASDAQ under the ticker "SRCL." Stericycle was an "issuer," as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-1(a) and 78m(b).

    2.    Individuals in Stericycle's Latin America division ("Stericycle LATAM") were responsible for overseeing the operations of Stericycle's subsidiaries in Mexico, Brazil, Argentina, Chile, and Puerto Rico. Beginning at least in or about 2013, Stericycle LATAM leadership and staff were based in Miami, Florida.

3.      "Stericycle LATAM Executive 1," an individual whose identity is known to the Fraud Section and the Company, was a Mexican citizen and resident of Miami, Florida, who worked for Stericycle as an executive at Stericycle LATAM.  Stericycle LATAM Executive 1's business responsibilities included oversight and management of Stericycle LATAM and certain of Stericycle's subsidiaries, including acquisitions, operations, finance, and sales. Throughout the relevant time period, Stericycle LATAM Executive 1's direct reporting line was to Stericycle senior executives.  Stericycle LATAM Executive 1 was an employee and agent of Stericycle, an "issuer," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

4.      Medam S.A. de C.V., together with other affiliated entities (collectively, "Stericycle Mexico"), was a wholly owned subsidiary of Stericycle and headquartered in and around Mexico City, Mexico. Stericycle Mexico was under the direction and control of Stericycle LATAM, and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Mexico and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

5.      "Stericycle LATAM Executive 2," an individual whose identity is known to the Fraud Section and the Company, was a Mexican citizen based in Mexico and an executive of Stericycle LATAM whose business responsibilities included, among other things, the management of Stericycle LATAM's finances. Stericycle LATAM Executive 2 was an employee of Stericycle Mexico and an agent of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

6.      Stericycle Gestao Ambiental Ltda., together with other affiliated entities (collectively, "Stericycle Brazil"), was a wholly owned subsidiary of Stericycle and headquartered in Recife, Brazil. Stericycle Brazil was under the direction and control of Stericycle LATAM, and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Brazil and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

7.      "Stericycle Brazil Executive 1," an individual whose identity is known to the Fraud Section and the Company, was a Brazilian citizen and an executive at Stericycle Brazil whose business responsibilities included oversight and management of Stericycle Brazil. Stericycle Brazil Executive 1 reported to Stericycle LATAM Executive 1 and was an agent of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

8.      "Stericycle Brazil Executive 2," an individual whose identity is known to the Fraud Section and the Company, was a Brazilian citizen and an executive of Stericycle Brazil whose business responsibilities included work in Stericycle Brazil's clinical waste division. Stericycle Brazil Executive 2 was an agent of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

9.      "Stericycle Brazil Executive 3," an individual whose identity is known to the Fraud Section and the Company, was a Brazilian citizen and an executive of Stericycle Brazil whose business responsibilities included the management of Stericycle Brazil's finances. Stericycle Brazil Executive 3 was an agent of Stericycle, an "issuer," as that term is used in the

FCPA, Title 15, United States Code, Section 78dd-1(a).

10.    "Brazil Vendors," entities the identities of which are known to the Fraud Section and the Company, were Brazilian companies with which Stericycle Brazil, in certain instances, entered into sham agreements to provide debt-collection services that were never provided. The Brazil Vendors issued false invoices that Stericycle Brazil used in its books and records to conceal the bribe payments to Brazilian government officials.

11.    "Mexico Vendors," entities the identities of which are known to the Fraud Section and the Company, were Mexican companies with which Stericycle Mexico entered into sham service contracts that were used to generate funds for bribe payments to Mexican government officials.

12.    Habitat Ecologico S.A., together with other affiliated entities (collectively, "Stericycle Argentina"), was a wholly owned subsidiary of Stericycle and headquartered in Buenos Aires, Argentina. Stericycle Argentina was under the direction and control of Stericycle LATAM, and its books, records, and accounts were consolidated into the financial statements of Stericycle. During the relevant time period, Stericycle Argentina and its employees were agents of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

13.    "Stericycle Argentina Executive 1," an individual whose identity is known to the Fraud Section and the Company, was an Argentinian citizen and an executive at Stericycle Argentina whose business responsibilities included work in the Stericycle Argentina Clinical Division. Stericycle Argentina Executive 1 was an agent of Stericycle, an "issuer," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1(a).

II.     The Foreign Corrupt Practices Act

14.     The FCPA, 15 U.S.C. §§ 78dd-1, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful for certain classes of persons and entities to corruptly offer, promise, authorize or pay money or anything of value, directly or indirectly, to a foreign government official to secure an improper advantage for the purpose of obtaining or retaining business for, or directing business to, any person.  The FCPA's accounting provisions, among other things, require that every issuer of publicly traded securities registered pursuant to Section 12(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78l, or required to file periodic reports with the SEC under Section 15(d) of the Securities Exchange Act, 15 U.S.C. § 78o(d) (hereinafter, "issuer"), make and keep books, records, and accounts that accurately and fairly reflect the transactions and disposition of the issuer's assets, and prohibit the knowing and willful falsification of an issuer's books, records, or accounts.  15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff(a).

III.    Overview of the Bribery Scheme

15.     From in or about and between at least 2011 and 2016, Stericycle, through certain of its employees and agents, knowingly and willfully conspired and agreed with others to corruptly offer and pay approximately $10.5 million in bribes to, and for the benefit of, foreign officials in Brazil, Mexico, and Argentina in order to obtain and retain business and other advantages for and on behalf of Stericycle. Stericycle earned approximately $21.5 million in profits from the corrupt scheme and through its corruptly obtained and retained government contracts.

16.      Stericycle, through Stericycle LATAM Executive 1 and others, expanded Stericycle LATAM through acquisitions and implemented similar methods of bribe payments in Brazil, Mexico, and Argentina. The co-conspirators made and caused to be made hundreds of bribe payments to foreign officials employed by government agencies and instrumentalities in Brazil, Mexico, and Argentina to obtain and retain business advantages and to direct business to Stericycle. Stericycle LATAM Executive 1 directed a scheme by which employees at Stericycle Brazil, Stericycle Mexico, and Stericycle Argentina made bribe payments, typically in cash, and calculated the amount of the bribes as a percentage of underlying contract payments made by or owing from a government customer. In each of the three jurisdictions, the co-conspirators used spreadsheets to track the bribe payments and used code words and euphemisms to refer to them: "CP" or "commission payment" in Brazil, "IP" or "incentive payment" in Mexico, and "alfajores" or "IP" in Argentina. The co-conspirators also produced false and misleading accounting documents and engaged in fake transactions with third parties to generate and conceal the funds used to make the illicit payments. In carrying out the scheme, certain of Stericycle's LATAM employees and agents utilized means and instrumentalities of interstate commerce, including the use of wires in the Southern District of Florida.

(a)      Bribes Paid In Brazil

17.      Between in or about 2011 and 2016, Stericycle, through certain employees and agents, knowingly and willfully conspired and agreed with others to corruptly offer and pay bribes to, and for the benefit of, foreign officials within the meaning of the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A), who were employed by at least 25 local and regional

government agencies and instrumentalities in Brazil to secure improper advantages in order to obtain and retain business from the Brazilian government in connection with providing waste management services, as well as to obtain authorization for priority release of payments owed under contracts with government agencies. Stericycle earned at least $13.4 million in profits from corruptly obtained and retained business with the Brazilian government.

18.     The bribe payments were made with the knowledge, authorization, and at the direction of Stericycle LATAM Executive 1 and Stericycle LATAM Executive 2, as well as Stericycle Brazil Executive 1, Stericycle Brazil Executive 2, and Stericycle Brazil Executive 3 and others at Stericycle Brazil. Stericycle LATAM Executive 1 also received spreadsheets containing the bribe payments in hardcopy and by email for review. For example, on or about January 8, 2016, Stericycle Brazil Executive 1 emailed Stericycle LATAM Executive 1 a version of the CP Spreadsheet, stating "[a]s per our conversation, please find attached the spreadsheet detailing the expenses with debt collection services for 2014 and 2015."

19.     Stericycle Executive 1 and Stericycle Brazil Executive 2 directed the distribution of cash to Stericycle Brazil sales employees, who used the cash to make bribe payments—often through third party intermediaries—to government officials in different regions. As part of the scheme, Stericycle Brazil employees agreed upon bribe payments in return for receiving payment priority on certain invoices owed under contracts with government agencies; the bribe payments were typically a percentage of the invoice amount owed or a fixed amount.

20.     Specifically, two employees at Stericycle Brazil (the "Stericycle Brazil finance employees") maintained a list of Stericycle Brazil sales employees who delivered bribe

payments to government officials associated with particular government customers. The Stericycle Brazil finance employees prepared bank orders in the names of the Stericycle Brazil sales employees, who would retrieve the money from the bank and deliver the cash funds—often through an intermediary—to government officials associated with government customers.

21.     For example, on or about March 30, 2015, after Stericycle Brazil had received payment from a government agency for an outstanding invoice, a Stericycle Brazil sales employee requested approval from Stericycle Brazil Executive 2 to make a bribe payment to a government official associated with that agency.  Stericycle Brazil Executive 2 approved the bribe payment, and a Stericycle Brazil finance employee made the funds available. The Stericycle Brazil sales employee retrieved approximately BRL 44,000 (approximately $13,200)—which represented approximately 20% of the invoice amount paid by the government agency—in cash from a bank and delivered it to a third-party intermediary so the intermediary could deliver at least half of that amount as a bribe to the official.

22.     Stericycle Brazil Executive 1 and Stericycle Brazil Executive 3 directed the Stericycle Brazil finance employees to conceal the bribery scheme in accounting records by making the illicit payments appear as legitimate business expenses. Prior to in or about September 2012, Stericycle Brazil had inflated invoices from vendors that also provided otherwise legitimate services in order to cover bribe payments. Beginning in or about September 2012, Stericycle Brazil Executive 1 and Stericycle Brazil Executive 3 retained the Brazil Vendors for the sole purpose of issuing fake invoices to cover bribe payments. To conceal the true purpose of the payments, the Stericycle Brazil finance employees recorded cash withdrawals as advance payments to the Brazil

Vendors for purported debt collection services that were never provided. In exchange for a fee, the Brazil Vendors generated fake invoices to Stericycle Brazil for the sham debt collection services.

23.     For example, on or about September 30, 2014, one of the Stericycle Brazil finance employees emailed one of the Brazil Vendors, stating "[k]indly issue the [Brazil Vendor] invoices following the amounts described below" and providing six different amounts for the requested fake invoices. The following day, on or about October 1, 2014, an employee of the Brazil Vendor replied to the Stericycle Brazil finance employee, attaching the corresponding fake invoices.

24.     At the direction of Stericycle Brazil Executive 1 and Stericycle Brazil Executive 3, the Stericycle Brazil finance employees tracked the bribe payments through the "CP Spreadsheet," which tracked relevant information about each bribe payment, including the region, client, bribe calculation (*i.e.*, percentage of the underlying invoice or fixed amount), revenue generated, amount of the bribe payment, third-party intermediary, and the name of the Stericycle Brazil sales employee responsible for retrieving the cash from the bank and delivering the bribe payment.

25.     For example, on or about July 29, 2014, a Stericycle Brazil finance employee emailed another Stericycle Brazil employee asking for a payment order in the amount of R$107,800.96 (approximately $48,499.65) to be withdrawn from a local bank the following day. The email requesting the payment order referenced one of the Brazil Vendors. The same amount, R$107,800.96, appeared in a July 2014 entry in the CP Spreadsheet.

26.     On or about August 3, 2015, a Stericycle Brazil finance employee emailed

two other Stericycle Brazil finance employees with the subject line listing one of the Brazil Vendors. The email cited four separate amounts tied to fake invoices issued by the Brazil Vendor between July 21, 2015, and July 30, 2015, totaling R$138,448.60 (approximately $42,876). The same total amount for July 21, 2015, through July 23, 2015, appeared on the CP Spreadsheet for July 2015, along with the region, the bribe payment amount, and the name of the same Brazil Vendor.

27.     On or about November 23, 2015, Stericycle Brazil Executive 1 emailed the Stericycle Brazil finance employees, authorizing a R$50,000 payment (approximately $13,206), in connection with one of the Brazil Vendors. The same amount, R$50,000, appeared as a November 24, 2015, entry in the CP Spreadsheet along with the name of the same Brazil Vendor.

(b)     Bribes Paid in Mexico

28.     Between in or about 2011 and 2016, Stericycle, through certain of its employees and agents, knowingly and willfully conspired and agreed with others to corruptly offer and pay bribes to, and for the benefit of, foreign officials within the meaning of the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A), who were employed by local and regional government agencies and instrumentalities in Mexico to secure improper advantages in order to obtain and retain business from at least 15 Mexican state-owned entities in connection with providing waste management services, to obtain authorization for or priority release of payments owed under contracts, and to avoid fines. Stericycle earned at least $3.7 million in profits from corruptly obtained and retained contracts with the Mexican government.

29.     The bribe payments were made with the knowledge, authorization, and at

the direction of Stericycle LATAM Executive 1 and Stericycle LATAM Executive 2, as well as executives and managers of Stericycle Mexico. Stericycle LATAM Executive 2 and Stericycle Mexico employees approved the distribution of funds to the Mexico Vendors, which purported to provide services to Stericycle Mexico, to make bribe payments to officials employed by state-owned and state-controlled hospitals and other government entities. Bribes were typically paid monthly to these officials and were calculated as a percentage of the customer's invoice value, a percentage of the amount of waste collected, or as a fixed amount. Most of the bribe payments were made in cash and were referred to in code as "little pieces of chocolates" or "IP payments".

30.     Stericycle LATAM Executive 1 received and reviewed spreadsheets reflecting the bribe payments. For example, on or about January 17, 2013, a Stericycle Mexico employee emailed Stericycle LATAM Executive 1 and Stericycle LATAM Executive 2, attaching a spreadsheet entitled "Invoices IP [] DIC.12" and describing the spreadsheet as a "reference file" that included the "monthly amount summary" and an analysis of the "concepts we use in order to sustain the operation." The attached spreadsheet included references to bribe payments from in or about January through December 2012, along with corresponding Mexico Vendors that would submit fake invoices with descriptions of fabricated services.

31.     Stericycle LATAM Executive 1 and Stericycle LATAM Executive 2 also participated in monthly Mexico Executive Committee sessions during which they reviewed financial records that contained an accounting of the bribe payments. For example, the minutes from the June 2012 and September 2013 Mexico Executive Committee sessions reflected a breakdown of "advanced payments," including "IP" (or "incentive payments") totaling 346,535

pesos (approximately $24,916) and 1,768,866 pesos (approximately $135,495), respectively.

32.     In order to conceal and paper over the bribe payments, Stericycle Mexico employees obtained fake invoices from approximately 45 different Mexico Vendors that provided no legitimate goods or services. The invoices included false descriptions of services that were not, in fact, provided. Many payments to the Mexico Vendors were made prior to or on the same day a corresponding invoice was issued. The Mexico Vendors then passed the money generated through payments on the fake invoices to Stericycle Mexico employees in order to pay bribes and, in some instances, paid the bribes directly.

33.     Stericycle LATAM Executive 2 and Stericycle Mexico employees maintained the "IP Spreadsheets," which tracked each bribe payment as well as pertinent details, including among others, the Mexico Vendor providing the fake invoice, the amount of the bribe, the date and method of payment, the Stericycle employee responsible for paying the bribe, method of calculating the bribe payment, the government official receiving the bribe, and the fake description of services noted on the Mexico Vendor invoice.

34.     For example, on or about October 1, 2014, a senior manager at Stericycle Mexico emailed Stericycle LATAM Executive 1, stating "[t]he dinner with [Mexican Official] from [the Mexican social security agency] was postponed for tomorrow, he has been in communication supporting the process of the current contracts and apparently, he is orienting us properly." The IP Spreadsheets showed the same Mexican Official receiving at least one bribe payment per month during most months in 2015, paid by Stericycle LATAM Executive 2.

35.     In or around May 2015, the IP Spreadsheets included 17 bribe payments

totaling approximately 1.1 million pesos (approximately $72,050). The IP Spreadsheets showed that 14 of the payments were made in cash by Stericycle LATAM Executive 2 to individuals, including named government officials. The IP Spreadsheets included false entries identifying fake services to justify the payments, such as "forklift rental," "publicity," and "promotional products."

36.     On or around May 4, 2016, Stericycle LATAM Executive 2 and another Stericycle LATAM employee, while in Miami, Florida, discussed the cost to the Company of discontinuing the payment of bribes to foreign officials. Specifically, Stericycle LATAM Executive 2 told the other LATAM employee that Stericycle Mexico would lose significant business if they stopped paying bribes. Stericycle LATAM Executive 2 then prepared a spreadsheet estimating that, in 2016, Stericycle Mexico would lose over 75 million pesos (approximately $4,020,000) in revenue if Stericycle "eliminat[ed] everything."

(c)     Bribes Paid in Argentina

37.     In or about and between 2011 and 2016, Stericycle, through certain of its employees and agents, knowingly and willfully conspired and agreed with others to corruptly offer and pay bribes to, and for the benefit of, foreign officials, within the meaning of the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A), in Argentina to secure improper advantages in order to obtain and retain business in connection with providing waste management services and to obtain authorization or priority release of payments owed under those contracts. Stericycle earned at least $4.4 million in profits from corruptly obtained and retained contracts with the Argentinian government.

38.     The bribe payments to Argentinian government officials were made with

the knowledge, authorization, and at the direction of Stericycle LATAM Executive 1 and Stericycle LATAM Executive 2, as well as Stericycle Argentina Executive 1 and other local managers ("Stericycle Argentina Country Management"). For example, on or about January 11, 2011, Stericycle LATAM Executive 2 emailed Stericycle LATAM Executive 1 providing a spreadsheet of the "Top 20 SG&A [(Selling, General, and Administrative)] expenses by country." In the email, Stericycle LATAM Executive 2 wrote that the spreadsheet included comparisons of the SG&A numbers with and without "IP," and broke down the amounts of these "incentive payments" by jurisdiction, including Mexico, Brazil, and Argentina.

39.     Stericycle Argentina Country Management calculated and approved bribe payments, which were typically paid in cash by Stericycle Argentina sales employees. For example, on occasions when a bribe needed to be paid, a Stericycle Argentina sales employee emailed an estimate of the bribe payment, which was typically a percentage of the underlying contract payment. Upon approval of the payment, the Stericycle Argentina sales employee obtained cash from the Stericycle Argentina office in Buenos Aires and subsequently delivered the bribe payment to the foreign official.

40.     For example, on or about September 27, 2012, two Stericycle Argentina sales employees emailed about a bribe to an Argentinian official. The bribe represented 10% of the underlying contract payment from a regional health ministry for waste collection services, totaling 213,000 pesos (approximately $45,610). On or about September 28, 2012, one of the Stericycle Argentina sales employees delivered the bribe payment in the amount of 21,300 pesos (approximately $4,560), in cash, to the Argentinian official.

41.     Stericycle Argentina employees used the words "alfa" and "alfajores" (a traditional cookie popular in Argentina) as codes to refer to the bribe payments. For example, on or about May 30, 2013, two Stericycle Argentina sales employees exchanged an email regarding outstanding payments from an Argentinian regional health ministry, writing, "I should tell you that when I talked about this issue, they reminded me that the alfajores from the last payment are outstanding, which is why I promised that if they give us the checks on Monday the 17 or Tuesday the 18 I would be bringing that plus the checks."

42.     On or about September 2, 2013, one of the Stericycle Argentina sales employees emailed his colleague a message with the subject "Alfa [] from the Last Payment of $257,730 Canceled on the 30th of August." The email includes a breakdown of a contract payment of 257,730 pesos (approximately $45,034), which after deducting taxes was 213,000 pesos (approximately $37,218) and a 15% "alfa," or bribe payment, totaling 31,950 pesos (approximately $5,583).

43.     On or about December 1, 2014, one of the Stericycle Argentina sales employees wrote from a personal email address to the personal email addresses of Stericycle Argentina Executive 1 and another Stericycle Argentina colleague regarding outstanding balances owed by a regional health ministry, stating, "I also want to remind you that we still owe the alfas for all of the last settlement, having this up to date helps a lot when it is time to apply pressure."

44.     Stericycle Argentina Executive 1 also maintained financial records that tracked payments and included references to "alfa" and "IP Commissions" (the same code word used in connection with bribes paid by Stericycle in Mexico).

IV.    False Books and Records

45.    In connection with the scheme detailed above to pay bribes to foreign officials in Brazil, Mexico, and Argentina, and in order to conceal the corrupt payments, between at least in or about 2012 and 2016, Stericycle, acting through its employees and agents, knowingly and willfully conspired and agreed with others to maintain false books, records, and accounts that did not accurately and fairly reflect the transactions and dispositions of its assets. Specifically, Stericycle falsely recorded bribe payments as legitimate expenses such as purported debt collection expenses, first aid training, and other false services, and maintained falsified Sarbanes-Oxley certifications, including knowingly false certifications signed by Stericycle LATAM Executive 1, in its consolidated books, records, and accounts.

46.    For example, from in or about 2012 through the first quarter in 2016, including on or about December 31, 2014, December 31, 2015, and March 31, 2016, Stericycle LATAM Executive 1 signed quarterly Sarbanes-Oxley certifications that falsely stated, in sum and substance, that Stericycle LATAM Executive 1 was not aware of any material event or potential material event — defined to include a "violation or alleged violation of any applicable law or regulation" — in the Stericycle LATAM business during the relevant period. These certifications failed to disclose, among other things, the bribe payments to various foreign officials in Brazil, Mexico, and Argentina, and the existence of false books, records, and accounts related to the concealment of those payments.

## COUNT ONE
### (Conspiracy to Violate the FCPA)

47.    The allegations contained in paragraphs 1 through 46 are realleged and

incorporated as if fully set forth in this paragraph.

48.     Between in or about 2011 and 2016, within the Southern District of Florida and elsewhere, the defendant Stericycle, Inc., together with others, did knowingly and willfully conspire to commit an offense against the United States, to wit:  being an issuer, an employee of an issuer, and an agent of an issuer, to make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to a foreign official and to a person, while knowing that all and a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to a foreign official, for purposes of (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government, agencies, and instrumentalities, in order to assist Stericycle, Inc. in obtaining and retaining business for and with, and directing business to, Stericycle, Inc. and others, in violation of Title 15, United States Code, Section 78dd-l(a).

<u>OVERT ACTS</u>

49.     In furtherance of the conspiracy and to effect its objects, within the Southern District of Florida and elsewhere, the defendant Stericycle, Inc., together with others, committed, and caused to be committed, among others, at least one of the following:

(a)     On or about January 11, 2011, Stericycle LATAM Executive 2 emailed Stericycle LATAM Executive 1 providing a spreadsheet of the "Top 20 SG&A [(Selling, General, and Administrative)] expenses by country." In the email, Stericycle LATAM Executive 2 wrote that the spreadsheet included comparisons of the SG&A numbers with and without "IP," and broke down the amounts of these "incentive payments" by jurisdiction, including Mexico, Brazil, and Argentina.

(b)     On or about September 27, 2012, two Stericycle Argentina sales employees emailed about a bribe to an Argentinian official. The bribe represented 10% of the underlying contract payment from a regional health ministry for waste collection services, totaling 213,000 pesos (approximately $45,610).

(c)     On or about September 28, 2012, one of the Stericycle Argentina sales employees delivered the bribe payment in the amount of 21,300 pesos (approximately $4,560), in cash, to the Argentinian official.

(d)     On or about January 17, 2013, a Stericycle Mexico employee emailed Stericycle LATAM Executive 1 and Stericycle LATAM Executive 2, attaching a spreadsheet entitled "Invoices IP [] DIC.12" and describing the spreadsheet as a "reference file" that included the "monthly amount summary" and an analysis of the "concepts we use in order to sustain the operation." The attached spreadsheet included references to bribe payments from in or about January through December 2012, along with corresponding Mexico Vendors that would submit fake invoices with descriptions of fabricated services.

(e)     On or about July 29, 2014, a Stericycle Brazil finance employee emailed another Stericycle Brazil employee asking for a payment order in the amount of R$107,800.96 (approximately $48,499.65) to be withdrawn from a local bank the following day. The email requesting the payment order referenced one of the Brazil Vendors. The same amount, R$107,800.96, appeared in a July 2014 entry in the CP Spreadsheet.

(f)     On or about October 1, 2014, a senior manager at Stericycle Mexico emailed Stericycle LATAM Executive 1, stating "[t]he dinner with [Mexican Official] from [the Mexican social security agency] was postponed for tomorrow, he has been in communication supporting the process of the current contracts and apparently, he is orienting us properly." The IP Spreadsheets showed the same Mexican Official receiving at least one bribe payment per month during most months in 2015, paid by Stericycle LATAM Executive 2.

(g)     On or about January 8, 2016, Stericycle Brazil Executive 1 emailed Stericycle LATAM Executive 1 a version of the CP Spreadsheet, stating "[a]s per our conversation, please find attached the spreadsheet detailing the expenses with debt collection services for 2014 and 2015."

(h)     On or about May 4, 2016, Stericycle LATAM Executive 2 and another Stericycle LATAM employee, while in Miami, Florida, discussed the cost to the Company of discontinuing the payment of bribes to foreign officials. Specifically, Stericycle LATAM Executive 2 told the other LATAM employee that Stericycle Mexico would lose significant business if they stopped paying bribes. Stericycle LATAM Executive 2 then prepared a

spreadsheet estimating that, in 2016, Stericycle Mexico would lose over 75 million pesos (approximately $4,020,000) in revenue if Stericycle "eliminat[ed] everything."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Violate the Accounting Provisions of the FCPA)

50.     The allegations contained in paragraphs 1 through 46 are realleged and incorporated as if fully set forth in this paragraph.

51.     Between in or about 2012 and 2016, within the Southern District of Florida and elsewhere, the defendant Stericycle Inc., together with others, did knowingly and willfully conspire to commit an offense against the United States, to wit:  to knowingly and willfully falsify and cause to be falsified books, records, and accounts required, in reasonable detail, to accurately and fairly reflect the transactions and dispositions of the assets of Stericycle, Inc., an issuer within the meaning of the FCPA, in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), and 78ff(a).

## OVERT ACTS

52.     In furtherance of the conspiracy and to effect its objects, within the Southern District of Florida and elsewhere, the defendant Stericycle, Inc., together with others, committed, and caused the commission of, among others, at least one of the following:

(a)     On or about December 31, 2014, Stericycle LATAM Executive 1 signed a quarterly Sarbanes-Oxley certification that falsely stated, in sum and substance, that Stericycle LATAM Executive 1 was not aware of any material event or potential material event

— defined to include a "violation or alleged violation of any applicable law or regulation" — in the Stericycle LATAM business during the relevant period. This certification failed to disclose, among other things, the bribe payments to various foreign officials in Brazil, Mexico, and Argentina, and the existence of false books, records, and accounts related to the concealment of those payments.

(b)     On or about December 31, 2015, Stericycle LATAM Executive 1 signed a quarterly Sarbanes-Oxley certification that falsely stated, in sum and substance, that Stericycle LATAM Executive 1 was not aware of any material event or potential material event — defined to include a "violation or alleged violation of any applicable law or regulation" — in the Stericycle LATAM business during the relevant period. This certification failed to disclose, among other things, the bribe payments to various foreign officials in Brazil, Mexico, and Argentina, and the existence of false books, records, and accounts related to the concealment of those payments.

(c)     On or about January 8, 2016, Stericycle Brazil Executive 1 emailed Stericycle LATAM Executive 1 a version of the CP Spreadsheet, stating "[a]s per our conversation, please find attached the spreadsheet detailing the expenses with debt collection services for 2014 and 2015."

(d)     On or about March 31, 2016, Stericycle LATAM Executive 1 signed a quarterly Sarbanes-Oxley certification that falsely stated, in sum and substance, that Stericycle LATAM Executive 1 was not aware of any material event or potential material event — defined to include a "violation or alleged violation of any applicable law or regulation" — in

the Stericycle LATAM business during the relevant period. This certification failed to disclose, among other things, the bribe payments to various foreign officials in Brazil, Mexico, and Argentina, and the existence of false books, records, and accounts related to the concealment of those payments.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY: _Jil Simon_

PAUL A. HAYDEN
JIL SIMON
TRIAL ATTORNEYS

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**v.**

Stericycle, Inc.

_____ /

**CASE NO.:**

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New Defendant(s) (Yes or No) No
Number of New Defendants 0
Total number of New Counts 0

**Court Division** (select one)
- ☑ Miami
- ☐ Key West
- ☐ FTP
- ☐ FTL
- ☐ WPB

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No
    List language and/or dialect:

4.  This case will take  0   days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)
    - I ☑ 0 to 5 days
    - II ☐ 6 to 10 days
    - III ☐ 11 to 20 days
    - IV ☐ 21 to 60 days
    - V ☐ 61 days and over

    (Check only one)
    - ☐ Petty
    - ☐ Minor
    - ☐ Misdemeanor
    - ☑ Felony

6.  Has this case been previously filed in this District Court? (Yes or No) No
    If yes, Judge                          Case No.

7.  Has a complaint been filed in this matter? (Yes or No) No
    If yes, Magistrate Case No.

8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No
    If yes, Judge                          Case No.

9.  Defendant(s) in federal custody as of

10. Defendant(s) in state custody as of

11. Rule 20 from the                          District of

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By:   _Paul A. Hayden_ _____

Paul A. Hayden
DOJ Trial Attorney

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** Stericycle, Inc.

**Case No:**

Count #1:

Conspiracy to Violate the Anti-Bribery Provision of the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371

**\*Max. Penalty:** Fine of up to $500,000 or twice the gross gain

Count #2:

Conspiracy to Violate the Books and Records Provisions of the Foreign Corrupt Practices Act

Title 18, United States Code, Section 371

**\*Max. Penalty:** Fine of up to $500,000 or twice the gross gain

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| | ) | |
| Stericyle, Inc., | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year.  I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date:   04/14/2022

Stericyle, Inc. BY
*Defendant's signature*


/s/ Timothy J. Treanor
*Signature of defendant's attorney*

TIMOTHY J. TREANOR
*Printed name of defendant's attorney*


*Judge's signature*


*Judge's printed name and title*
